UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Civ No:

JOANN ADAMSON

                Plaintiff,

  -against-                                      **COMPLAINT**

GRENADIER REALTY CORP.

                                            **PLAINTIFF DEMANDS A TRIAL BY JURY**

                Defendant.

------------------------------------------------------------------------X

Plaintiff, JOANN ADAMSON (hereinafter referred to as "ADAMSON" or "Plaintiff"), by and through her attorneys, DEREK SMITH LAW GOUP, PLLC, hereby complains of Defendant GRENADIER REALTY CORP. (hereinafter "GRENADIER" or "Defendant"), upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), the Administrative Code of the City of New York and the laws of the State of New York, seeking damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, disability discrimination and retaliation by her employers.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under the FMLA. The Court also has jurisdiction pursuant to 42 U.S.C. §12101 et. 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction

thereto. This action involves questions of Federal law.

3. The Court has supplemental jurisdiction under the State laws.

4. Venue is proper in that the events arose in New York County within the Southern District of New York.

## PARTIES

5. At all times material, Plaintiff is an individual woman who resides in New York County, New York, and is a former employee of Defendant.

6. At all times material, Defendant GRENADIER REALTY CORP. is a domestic business corporation duly existing by virtue of the laws of the State of New York, County of New York.

7. At all times material, Defendant did and continues to do business in the State of New York.

8. Defendant employer employs 50 or more employees within 75 miles.

9. At all times material, Plaintiff was employed as a senior property manager at Defendant GRENADIER REALTY CORP.

## MATERIAL FACTS

10. In or about October 2008, Plaintiff ADAMSON began working for Defendant as a property manager.

11. Plaintiff managed two (2) properties for Defendant. One building was a tax credit property (hereinafter referred to as "Tax Credit Building"), primarily occupied by low income senior citizens who were previously homeless. The second building was

next door and was occupied by low income seniors of predominantly Asian descent (hereinafter referred to as "Senior Building").

12. The application process to become a resident of these buildings was and is quite extensive. Potential applicants for these buildings submit their requests to Defendant, which then enters their requests into a logbook. As there is a significant volume of applicants, there is a large waiting list for vacancies. When a vacancy occurs, a letter of interest is sent to a group of applicants who are next on the waiting list. Interested parties must then submit to a background check, credit check and asset verification, followed by a home visit. Once the applicant has qualified, their file is sent to the New York City Housing Development Corporation for final approval.

13. These logbooks were managed by Defendant's employee, ZOILA AGUIRRE (hereinafter referred to as "AGUIRRE"), at Defendant's office located at 265 Cherry Street, New York, New York 10002.

14. In or around March 2015, Defendant lost the management contract for the building site where AGUIRRE worked, 265 Cherry Street, New York, New York 10002.

15. As a result, the logbooks were moved to Plaintiff's office.

16. Plaintiff's office was located in Manhattan at 82 Rutgers Slip, New York, New York 10002.

17. The Tax Credit Building was at the same location as Plaintiff's office, 82 Rutgers Slip, New York, New York 10002.

18. The Senior Building was directly across the street from these buildings and was located at 80 Rutgers Slip, New York, New York 10002.

19. Plaintiff's rate of pay was approximately $58,000.00 per year at the time of her

termination.

20. Plaintiff was disabled and had significant vision impairments due to cataracts. In order to mitigate this, Plaintiff attempted to learn behavioral modifications such as covering one eye or turning her head from side to side. Regardless of such compensating behaviors, Plaintiff was substantially limited in seeing compared to most people in the general population.

21. On or about June 10, 2015, Plaintiff was working from Defendant's main management office located at 1230 Pennsylvania Avenue, Brooklyn, New York 11239.

22. Plaintiff approached Defendant's Vice President of Property Managers, NATALIE WEINTHAL (hereinafter referred to as "WEINTHAL"), and stated that she had something important to discuss. WEINTHAL responded, "I hope it's not bad news. You're not quitting are you?"

23. Plaintiff handed WEINTHAL her request for medical leave. Plaintiff requested nine (9) weeks off to have several medical procedures done, such as cataract surgery, bone fusion on her hand and surgery on her foot.

24. WEINTHAL became very angry with Plaintiff and said, "Do you really need these surgeries? You may as well have given me a letter of resignation!" Furthermore, WEINTHAL stated, "There is no way you could take that amount of time away from the job, how would I cover the site in your absence? The owners would flip out! This is not gonna happen - who else did you tell about this?"

25. Plaintiff informed WEINTHAL that she had come to WEINTHAL first. WEINTHAL threw the letter back at Plaintiff and stormed out of the office.

26. Defendant prohibited, interfered, and restrained Plaintiff from attempting to exercise her right to request medical leave.

27. Later that afternoon, WEINTHAL returned to the office and instructed Plaintiff that Defendant's Director of Human Resources, ROD ROBERTSON (hereinafter referred to as "ROBERTSON"), would be calling Plaintiff to discuss her request for medical leave.

28. Shortly thereafter, ROBERTSON called Plaintiff and asked, "Are these surgeries really necessary? Can't some of them wait? I understand you may want to do your eye, but can't you put off the thumb and toe?" Furthermore, ROBERTSON informed Plaintiff that him and WEINTHAL were concerned about the potential lack of coverage on Plaintiff's sites, and restated that "nine weeks is too long to be out."

29. Plaintiff was in shock and remained speechless for a minute. Plaintiff then said to ROBERTSON, "I can't believe you're asking me all of these questions and treating me this way."

30. ROBERTSON demanded that Plaintiff speak to her doctors and put off the surgeries or break-up her time out into two parts, stating, "It would really benefit the company if you could do this."

31. Defendant prohibited, interfered, and restrained Plaintiff from attempting to exercise her right to request medical leave.

32. Still in shock of the situation, Plaintiff told ROBERTSON that she would have to get back to him.

33. As a result, ROBERTSON threatened Plaintiff, "Don't forget, medical leave requests are granted at the employer's discretion. I make the determination to approve

requests for leave."

34. Once again, Defendant's comment prohibited, interfered, and restrained Plaintiff from attempting to exercise her right to request medical leave.

35. On or about June 12, 2015, Plaintiff called ROBERTSON to inform him that she was able to divide the leave into two parts, one of which would be in July, the other in October. Plaintiff would take "part-one" for five (5) weeks starting in July, and would take "part-two" for four (4) weeks starting in October.

36. In addition, Plaintiff informed ROBERTSON that the return dates were mere estimates and could fluctuate pending her doctors evaluation. ROBERTSON consented and signed Plaintiff's request for medical leave.

37. ROBERTSON instructed Plaintiff that she would be communicating with Defendant's Human Resources employee, Tere Soto (hereinafter referred to as "SOTO"), regarding the matter.

38. On or about June 24, 2015, WEINTHAL informed Plaintiff that WEINTHAL had broken the news of Plaintiff's absence to the owner of the buildings, Settlement Housing Fund (hereinafter referred to as "The Owners"). Additionally, WEINTHAL informed Plaintiff of Defendant's plan to manage Plaintiff's properties during her absence.

39. On or about July 10, 2015, the Defendant's Director of Leasing, IGAL WINTER (hereinafter referred to as "WINTER"), came to Plaintiff's office to look at the applications for the Tax Credit Building. WINTER had questions as to the tenant selection process for that site. Plaintiff informed WINTER that at this site, The Owners selected the applicants they wanted from the waiting lists. WINTER was

surprised by this but stated, "The owners do have the final say."

40. WINTER instructed Plaintiff to compile a list of those applicants that were next in line to be housed at each site, that way vacancies could be filled smoothly during her absence.

41. WINTER then instructed Plaintiff to bring both waiting list ledger logbooks to his office in Brooklyn. Over the next two weeks, Plaintiff brought WINTER the logbooks for the Tax Credit Building as well as the Senior Building.

42. Plaintiff began "part-one" of her approved medical leave on or about July 23, 2015.

43. On or about July 23, 2015, Plaintiff had cataract surgery done on her left eye by Dr. Wilson Ko.

44. On or about July 24, 2015, Plaintiff visited Dr. Ko's office for her post-operation follow-up. Dr Ko's staff faxed SOTO Plaintiff's FMLA and disability documentation.

45. On or about July 30, 2015, Plaintiff had bone fusion surgery done on her right thumb/knuckle by Dr. Steven Beldner. The procedure involved removing bone fragments in Plaintiff's hand, as well as reattaching Plaintiff's ligament. Plaintiff sustained this injury while moving file cabinets at her work-site during Hurricane Sandy cleanup.

46. On or about July 31, 2015, Plaintiff faxed Dr. Beldner's office her FMLA documentation to complete and send to SOTO.

47. On or about August 4, 2015, Plaintiff called SOTO to confirm that she had received the FMLA documentation from Dr. Beldner regarding Plaintiff's thumb surgery. SOTO confirmed receipt.

48. On or about August 10, 2015, SOTO left Plaintiff a voicemail on her cell phone

stating, "I have some information for you. I'd really appreciate a call back."

49. On or about August 10, 2015, Plaintiff returned SOTO's call. During their conversation, SOTO informed Plaintiff, "WEINTHAL told me to tell you that you can't take your medical leave in October. WEINTHAL said she can't spare you until next May."

50. Defendant prohibited, interfered, and restrained Plaintiff from attempting to exercise her right to request medical leave.

51. SOTO told Plaintiff that she did not understand why WEINTHAL said that, and then told Plaintiff, "Your FMLA would cover you until next July." SOTO instructed Plaintiff to call ROBERTSON with any questions.

52. Furthermore, at the conclusion of their call, SOTO asked Plaintiff if she was aware that on Plaintiff's FMLA papers her doctor had written a return date of September 8, 2015.

53. Plaintiff initially listed her tentative return date as August 27, 2015. However, Plaintiff informed ROBERTSON that this date was merely an estimate and her return date could change pending her doctors evaluation. Fully aware of this, ROBERTSON signed Plaintiff's medical leave.

54. Defendant retaliated against Plaintiff for taking FMLA leave by revoking her right to take additional medical leave.

55. On or about August 12, 2015, Plaintiff attended post-operative appointments with both Dr. Ko and Dr. Beldner. Dr. Beldner changed the cast on Plaintiff's hand and instructed her to do as little as possible to aid the healing process as well as avoiding possible re-aggravation. Furthermore, Dr. Beldner confirmed Plaintiff's return date

would be September 8, 2015. Dr. Beldner provided Plaintiff a note indicating this information and Plaintiff immediately faxed the note to SOTO.

56. On or about August 13, 2015, Plaintiff called WEINTHAL to inform her that Plaintiff's return date had been extended beyond her initial estimated return date. However, Plaintiff was unable to speak with her directly. Plaintiff spoke with WEINTHAL's assistant, who informed Plaintiff that WEINTHAL was already aware of the extension from reviewing the paperwork sent by Plaintiff's doctor.

57. On or about August 21, 2015, Plaintiff called SOTO to find out why she had still not received her disability check. SOTO informed Plaintiff that she had already contacted the disability provider about the delay and that Plaintiff should contact the company directly.

58. On or about September 8, 2015, Plaintiff attended her follow-up appointment with Dr. Beldner regarding her hand/thumb. Dr. Beldner informed Plaintiff that she could return to work the following day on light-duty.

59. Later that day, Plaintiff received a voice-mail from SOTO reminding Plaintiff that before returning to work the following day, Plaintiff must provide a note from her doctor indicating that Plaintiff was medically cleared to return to work.

60. In response to SOTO's voice-mail, Plaintiff attempted to call SOTO. However, when Plaintiff called SOTO, ROBERTSON answered her phone.

61. Plaintiff informed ROBERTSON that she was just about to scan Dr. Beldner's note to SOTO. ROBERTSON asked Plaintiff, "When is your return date?" Plaintiff informed ROBERTSON that she was returning to work tomorrow. ROBERTSON seemed surprised and instructed Plaintiff to make sure SOTO received the note from

Dr. Beldner.

62. Later that day, Plaintiff attended her follow-up appointment with Dr. Ko.

63. During her appointment with Dr. Ko, Plaintiff received an email to her cell phone from ROBERTSON. The subject line of the email read "PLEASE CALL!" and the body stated that Plaintiff should call ROBERTSON as soon as possible.

64. Immediately thereafter, Plaintiff called ROBERTSON. ROBERTSON instructed Plaintiff, "Come to my office in Human Resources at 11 a.m. the following morning to discuss your disability."

65. Plaintiff thought this was quite unusual. Plaintiff had been on medical leave several years prior and was never asked to report to Human Resources upon her return.

66. On or about the morning of September 9, 2015, Plaintiff arrived at ROBERTSON's office shortly before 11 a.m. At this time, Defendant wrongfully and unlawfully terminated Plaintiff on the basis of her disability and on the basis of her FMLA leave and because she complained of Defendants' unlawful practices.

67. Defendant's reason for terminating Plaintiff was merely pretextual when in fact, Plaintiff was retaliated against for exercising her right to medical leave.

**AS A FIRST CAUSE OF ACTION
FOR VIOLATIONS OF THE
FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.**

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69. §2612 of the Family Medical Leave Act states in pertinent part:

(a) In general

(1) Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation, determine) arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.

70. Defendant violated Plaintiff's FMLA rights by failing to provide her with appropriate leave thereunder.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION AND INTERFERENCE UNDER THE
### FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if the same were set forth herein fully at length.

72. § 2615 of the FMLA states as follows:

Prohibited acts

(a) Interference with rights

(1) Exercise of rights

      It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

  (2) Discrimination
      It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

73. Defendant unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempt to exercise her rights under the above section and discriminated and retaliated against Plaintiff by terminating Plaintiff from her employment for opposing Defendant's unlawful employment practice and attempting to exercise her rights.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

93. Defendant violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of her disability.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

95. New York State Executive Law § 296(7) provides it shall be an unlawful discriminatory practice:

    "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

96. Defendant violated the section cited herein as set forth.

## AS AN FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

97. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

98. New York State Executive Law § 296(6) provides that is shall be an unlawful discriminatory practice:

    "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

99. Defendant engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct outlined by the above discriminatory, unlawful and retaliatory conduct.

**AS A SIXTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE**

100. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

101. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice:   "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

102. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's disability.

**AS A SEVENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE**

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice:

"For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

105. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, § 8-107(1)(e) by discharging and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendant.

### AS AN EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

106. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

107. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice:

108. "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

109. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A NINTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

110. Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

111. Section 8-107(19), entitled Interference with protected rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

112. Defendants violated the above section as set forth herein.

### AS A TENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

113. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

114. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or

agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

115. Defendants violated the above section as set forth herein.

## INJURY AND DAMAGES

116. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, health insurance costs, medical bills for herself, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to her reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

**WHEREFORE**, Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:   New York, New York
         April 7, 2016

                                        DEREK SMITH LAW GROUP, PLLC
                                        Attorneys for Plaintiff

                           By:          _____
                                        Zachary Holzberg, Esq.
                                        30 Broad Street, 35th Floor
                                        New York, New York 10004
                                        (212) 587-0760